**Darlene McCLENDON, Appellant,**

v.

**The STATE of Texas.**

**No. 795–99.**

Court of Criminal Appeals of Texas.

March 8, 2000.

Paul Mewis, Houston, for appellant.

Alan Curry, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

## *O P I N I O N*

KEASLER, J., delivered the unanimous opinion of the Court.

Darlene McClendon twice walked into the Snack Shack and Meat Market with someone else's food stamp cards. She charged a total of $214 to the victims' cards, but only got $160 cash back. Is this evidence sufficient to prove that she obtained a value of $200 or more? We conclude that it is.

### FACTS

In the fall of 1996, the Houston Police Department and the Texas Department of Human Services began an investigation into the illegal use of Electronic Benefit Transfer (EBT) cards at a convenience store in Houston. At the Snack Shack and Meat Market, Officer Loan Truong acted as a cashier in order to monitor the use of the EBT cards. On December 3, 1996, McClendon entered the Snack Shack and unlawfully used Stephanie Earl's EBT

card to receive $110 cash. Officer Truong deducted a total amount of $147 from Earl's card and gave McClendon $110 in cash. The record reflects that a 25% mark-up or "discount rate" was the standard fee for illegally obtaining cash through the use of an EBT card in Harris County. Two days later, McClendon conducted a similar transaction for $50 cash. This time, she unlawfully used Mary McClendon's card and, after calculating the mark-up as before, Officer Truong deducted $67 from the victim's card.

## PROCEDURAL HISTORY

McClendon was found guilty of the illegal use, redemption and transfer of food stamp benefits for a total value of over $200.[1] She raised four points of error on appeal. The Fourteenth Court of Appeals reversed the conviction based on her second point of error challenging the sufficiency of the evidence.[2] We granted the State's petition for discretionary review. It contends that the Court of Appeals erred in holding that the value McClendon obtained is limited to the cash value she received.

## ANALYSIS

■ When reviewing the legal sufficiency of the evidence, we look at the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[3] The State argues that McClendon is guilty of a felony charge because, although she only received $160 in cash, she obtained an exchange value greater than $200. McClendon responds that the value she received was less than $200, so she was guilty, at most, of a misdemeanor.

Texas Human Resource Code § 33.011 provides, in relevant parts, as follows:

(a) A person commits an offense if the person knowingly uses, alters, or transfers food stamp benefit permits in any manner not authorized by law. An offense under this subsection is a Class A misdemeanor if the value of the food stamp benefit permits is less than $200 and a felony of the third degree if the value of the food stamp benefit permits is $200 or more.

\* \* \*

(f) For the purposes of Subsections (a) and (b), the value of food stamp benefit permits is the cash or exchange value obtained in violation of this section.

■ The Court of Appeals held that "under the statutory definition of 'value,' [McClendon] only obtained $160."[4] The Court erred because it only looked to the cash amount that McClendon received. It is true that McClendon only obtained $160 in cash. But with the mark-up, the total value she obtained was $214. If McClendon had paid the $54 mark-up out of her own pocket and not charged it to the EBT cards, she would have only obtained a value of $160. But since she charged the discount rate to the victims' cards, McClendon received an additional benefit of $54. The $54 charged to the cards was $54 that McClendon saved. The mark-up was a necessary component of the exchange value obtained. In other words, the phrase "exchange value obtained" includes the loss to the State or the victim. In this case, that loss includes the "fees" charged for illegally providing cash instead of food.

McClendon argues that *Abu–Ein v. State*[5] supports the Court of Appeals' con-

1. TEX. HUM. RES.CODE § 33.011 (VERNON SUPP. 1996).

2. *McClendon v. State*, 994 S.W.2d 706 (1999).

3. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

4. *McClendon*, 994 S.W.2d at 708.

5. *Abu–Ein v. State*, 921 S.W.2d 807 (1996).

clusion. But as the State points out, *Abu–Ein* is inapposite to the instant case. In *Abu–Ein*, the defendant received a book of food stamp coupons, not cash. There was no evidence of any mark-up charged to anyone else. Here, McClendon received $160 in cash, and she received the additional benefit of the $54 which she charged to the victims' cards. The total exchange value McClendon obtained was $214.

## CONCLUSION

Because we find that the value obtained by McClendon was $214, we conclude the evidence was legally sufficient to convict. We reverse the decision of the Court of Appeals and remand this case to that Court to consider McClendon's remaining points of error.

